STATE OF CONNECTICUT *v.* WILLIAM R. SCRIBNER
(AC 20985)

Schaller, Spear and Hennessy, Js.[1]

---

[1] This appeal was argued before a panel comprised of Judges Schaller, Spear and Hennessy. Although Judge Spear agreed with the other judges regarding the resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however, that rather than rearguing the appeal to this court with a panel consisting of the original two judges and an additional judge, they would permit the remaining two judges alone to render a written decision.

Argued March 22—officially released October 1, 2002

*John J. Kelly*, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Frank S. Maco*, state's attorney, and *Kevin S. Russo* and *Ronald G. Weller*, assistant state's attorneys, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, William R. Scribner, appeals from the judgment of conviction, rendered after a jury trial, of negligent homicide with a motor vehicle in violation of General Statutes § 14-222a. On appeal, the defendant claims that the trial court improperly refused to instruct the jury that contributory negligence is a valid defense under General Statutes § 14-283[2] to

---

[2] General Statutes § 14-283 provides in relevant part: "(a) 'Emergency vehicle', as used in this section, means . . . any state or local police vehicle operated by a police officer . . . answering an emergency call or in the pursuit of fleeing law violators.

"(b) The operator of any emergency vehicle may . . . (2) proceed past any red light or stop signal or stop sign, but only after slowing down or stopping to the extent necessary for the safe operation of such vehicle, (3) exceed the posted speed limits or other speed limits imposed by or pursuant to section 14-218a or 14-219 as long as he does not endanger life or property by so doing, and (4) disregard statutes, ordinances or regulations governing direction of movement or turning in specific directions.

the charge of negligent homicide with an emergency vehicle. We conclude that the defendant was not entitled to the requested jury instruction because it was an incorrect statement of the law. Accordingly, we affirm the judgment of the trial court.

The following facts are relevant to the resolution of the defendant's appeal. While on duty in his patrol car on June 16, 1998, the defendant, a New Milford police officer, responded to a "code three" call, the highest priority call, by the police dispatcher for all available

"(c) The exemptions herein granted shall apply only when an emergency vehicle is making use of an audible warning signal device, including but not limited to a siren, whistle or bell which meets the requirements of subsection (f) of section 14-80, and visible flashing or revolving lights which meet the requirements of sections 14-96p and 14-96q, and to any state or local police vehicle properly and lawfully making use of an audible warning signal device only.

"(d) The provisions of this section shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property.

"(e) Upon the immediate approach of an emergency vehicle making use of such an audible warning signal device and such visible flashing or revolving lights or of any state or local police vehicle properly and lawfully making use of an audible warning signal device only, the operator of every other vehicle in the immediate vicinity shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the emergency vehicle has passed, except when otherwise directed by a state or local police officer or fireman as provided in section 7-313a. . . .

"(g) Any person who wilfully or negligently obstructs or retards any ambulance or emergency medical service organization vehicle while answering any emergency call or taking a patient to a hospital, or any vehicle used by a fire department or any officer or member of a fire department while on the way to a fire, or while responding to an emergency call, or any vehicle used by the state police or any local police department, or any officer of the Division of State Police within the Department of Public Safety or any local police department while on the way to an emergency call or in the pursuit of fleeing law violators, shall be fined not more than fifty dollars or imprisoned not more than seven days or both.

"(h) Nothing in this section shall be construed as permitting the use of a siren upon any motor vehicle other than an emergency vehicle, as defined in subsection (a) of this section, or a rescue service vehicle which is registered with the Department of Motor Vehicles pursuant to section 19a-181."

units to respond to a brawl involving as many as twenty combatants at Warner Beach on Candlewood Lake. With the emergency lights flashing on his patrol car, the defendant followed another patrol car operated by Officer James Antonelli southbound on Route 7 toward Warner Beach. Evidence was presented at trial that the defendant's patrol car followed Antonelli's patrol car through the intersection where the accident occurred at a distance of approximately three hundred to five hundred feet. Approximately one-half mile from where the defendant and Antonelli entered Route 7, the highway intersects with Sunny Valley Road. As the patrol cars approached the intersection, Angela D'Aquila's vehicle entered Sunny Valley Road and proceeded toward Route 7. After Antonelli's vehicle passed through the intersection of Route 7 and Sunny Valley Road, D'Aquila began to turn left onto Route 7. As D'Aquila entered Route 7, the defendant continued southbound on Route 7. Upon seeing D'Aquila's vehicle, the defendant braked and slid until the left front portion of his vehicle collided with the operator's side door of D'Aquila's vehicle. D'Aquila died as a result of injuries sustained in the collision.

On April 11, 2000, the state filed an amended long form information alleging that the defendant negligently had operated his vehicle at or near the intersection of Route 7 (Danbury Road) and Sunny Valley Road in New Milford, causing the death of D'Aquila in violation of § 14-222a, in that the defendant had "proceeded past a red light without slowing down or stopping to the extent necessary for the safe operation of his motor vehicle, exceeded the posted speed limit and endangered life by doing so and therefore breached his duty to drive with due regard for the safety of all persons and property." On April 19, 2000, the jury found the defendant guilty of negligent homicide with a motor vehicle in

violation of § 14-222a. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the court improperly refused to instruct the jury that contributory negligence constitutes a defense under § 14-283 to a charge of negligent homicide with a motor vehicle in violation of § 14-222a. The defendant acknowledges that the instruction given to the jury by the court in the present case is consistent with Connecticut case law stating that contributory negligence is not a defense to negligent homicide with a motor vehicle.[3] He argues, however, that he nonetheless was entitled to the requested instruction because the legislature could not have envisioned the result in this case when it enacted § 14-283. Specifically, he argues that the court's jury charge without the additional requested instruction fails to give § 14-283 effect and causes a "bizarre result," whereby he could be convicted of a crime while being exonerated from any liability in a civil action on the basis of the same facts. The defendant's claim is without merit.

Initially, we set forth the standard of review. "It is well established that [a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given." (Internal quotation marks omitted.) *Bonan* v. *Goldring Home Inspections, Inc.*, 68 Conn. App. 862, 867, 794 A.2d 997 (2002). Conversely, it also is true that a court is under no duty to give a requested jury instruction that is an improper statement of law. Accordingly, if this court concludes that the requested jury instruction was an improper statement of law, the defendant is not entitled to the requested jury instruction and the court's refusal was proper.

---

[3] See *State* v. *Pope*, 6 Conn. Cir. Ct. 712, 714, 313 A.2d 84 (1972).

In *State* v. *Nesteriak*, 60 Conn. App. 647, 654, 760 A.2d 984 (2000), this court stated that § 14-283 (b) does not immunize the operator of an emergency vehicle from criminal liability for a violation of § 14-222a, negligent homicide with a motor vehicle. The defendant argues that our discussion in *Nesteriak* regarding the interaction of § 14-283 with § 14-222a is merely dicta and not binding on this court because the defendant in that case was not charged with negligent homicide with a motor vehicle. We disagree with the defendant's assertion that the discussion of those statutes in *Nesteriak* is dicta.

The fact that the defendant in *Nesteriak* was not charged with negligent homicide does not undermine the precedential force of our discussion of §§ 14-222a and 14-283 or its effect of serving notice of this court's conclusion that the protections against liability afforded under § 14-283 do not apply to a charge of negligent homicide with a motor vehicle. The legitimacy of the proposition from *Nesteriak*, on which we now rely, not only is supported by Connecticut case law, but also by what we interpret as the legislature's intent when enacting § 14-283 (b) (3).

In *State* v. *Pope*, 6 Conn. Cir. Ct. 712, 714, 313 A.2d 84 (1972), the Appellate Division of the Circuit Court held that the general rule that contributory negligence is not a defense in a criminal case applies in a negligent homicide case where ordinary negligence is one of the required elements, unless such negligence on the part of the decedent is found to be the sole proximate cause of his death. We adopt the appellate division's reasoning in *Pope* and thus conclude that the requested jury instruction is an improper statement of law. Accordingly, the court properly denied the defendant's request.

Further, we note that the court's instruction as given in the present case did not cause a bizarre result unin-

tended by the legislature when enacting § 14-283 (b) (3). The language of the statute clearly limits immunity in favor of preserving the safety of the public. Thus, we conclude that the legislature did not intend to extend liability protection to a defendant in circumstances such as are present in the case at hand. In his brief, the defendant acknowledges that § 14-283 (d) provides an exception when, even in the civil context, an emergency vehicle operator will be liable for failing to operate his vehicle with "due regard for the safety of all persons and property." It is clear to this court that the legislature did not intend to put the limitation of liability offered under § 14-283 above the safety of the public. The charge in the present case alleged that the defendant exceeded the posted speed limit and did not slow to an appropriate speed when entering the intersection. Section 14-283 (b) (3) itself has within it a limitation on the protection against liability it offers for speeding. Under § 14-283 (b) (3), an emergency vehicle driver may exceed posted speed limits only "as long as he does not endanger life or property by so doing . . . ." In the present case, the defendant was charged with and found to have endangered life improperly by speeding through the intersection where the collision occurred. Thus, § 14-283 does not offer the defendant any protection against liability in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.

