STATE OF CONNECTICUT *v.* DANIEL PEREZ
(SC 17162)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued January 7—officially released November 29, 2005

*Francis T. Mandanici*, senior assistant public defender, pro se, the plaintiff in error.

*Jane R. Rosenberg*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan Quinn Cobb*, assistant attorney general, for the defendants in error (Michael Dearington, state's attorney, et al.).

### Opinion

PALMER, J. The plaintiff in error, Francis T. Mandanici (plaintiff), a senior assistant public defender, brings this writ of error against the defendants in error, Michele T. Angers, in her capacity as chief clerk of the Appellate Court, and Michael Dearington, in his capacity as state's attorney for the judicial district of New Haven (defendants). The plaintiff claims that the Appellate Court violated his federal and state due process rights by reprimanding him without first providing him with notice and an opportunity to be heard, and that the reprimand was unsupported by the facts. The plaintiff's claims arise from certain statements that are contained in an order issued by the Appellate Court denying a motion that the plaintiff had filed, on behalf

of a client in a criminal case, seeking reconsideration en banc of a decision that the Appellate Court had issued in that case. In that order, the Appellate Court stated that the plaintiff had made a misrepresentation of material fact to that court in violation of rule 3.3 (a) of the Rules of Professional Conduct,[1] and that he had, without justification, attacked the integrity of the Appellate Court and otherwise acted in an unprofessional manner. We agree with the plaintiff that the Appellate Court's finding that he had violated rule 3.3 (a) of the Rules of Professional Conduct was tantamount to a reprimand and, therefore, that his due process rights were violated by virtue of the Appellate Court's failure to afford the plaintiff notice and an opportunity to be heard before making any such finding. We also agree with the plaintiff that the Appellate Court's finding of a violation of rule 3.3 (a) of the Rules of Professional Conduct cannot be sustained upon application of the heightened burden of proof applicable to such disciplinary findings. We further conclude, however, that the plaintiff is not entitled to relief with respect to the Appellate Court's other criticisms of his conduct. Accordingly, we grant the writ of error in part.[2]

---

[1] Rule 3.3 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not knowingly . . . (1) [m]ake a false statement of material fact or law to a tribunal . . . ."

[2] We note, preliminarily, that the defendants filed a motion to dismiss the writ of error, claiming that this court lacked subject matter jurisdiction over the writ because Practice Book § 72-1 (a) allows writs of error to be brought only from "a final judgment of the superior court," and not from an order of the Appellate Court. We reject this claim for two reasons. First, "[t]he writ of error . . . is a concept deeply rooted in our common law . . . [and] exists independent of its statutory authorization." (Citations omitted; internal quotation marks omitted.) *State* v. *McCahill*, 261 Conn. 492, 499–500, 811 A.2d 667 (2002); see also *State* v. *Caplan*, 85 Conn. 618, 622, 84 A. 280 (1912) ("[t]he writ of error is the common-law method, and formerly the only method in this [s]tate, of carrying up a cause from an inferior to a higher court for the revision of questions of law"). Second, the language of Practice Book § 72-1 (a), which provides in relevant part that writs of error "may be brought from a final judgment of the superior court to the supreme court," predates the creation of the Appellate Court in 1983. We therefore

The following undisputed facts and procedural history are necessary to our disposition of the plaintiff's claims. The plaintiff represented Daniel Perez in a criminal case in which Perez was charged with two counts each of assault in the first degree and assault in the second degree. After the trial court, *Thompson, J.*, denied Perez' motion to dismiss the charges on the ground of selective prosecution, Perez entered a plea of nolo contendere to one count of assault in the first degree and was sentenced to twenty years imprisonment, execution suspended after ten years. Perez' plea was conditioned on his right to appeal, which he did.

On appeal, the Appellate Court affirmed Perez' conviction. See *State* v. *Perez*, 80 Conn. App. 354, 364, 835 A.2d 84 (2003), superseded, 82 Conn. App. 100, 842 A.2d 1187, cert. denied, 269 Conn. 904, 852 A.2d 734 (2004). In doing so, the Appellate Court summarized the facts underlying the charges that the state had filed against Perez: "On May 28, 2000, an officer with the Berlin police department attempted to stop and approach the vehicle being driven by [Perez] after discovering that it was displaying a stolen marker plate. The officer stopped the vehicle and, as he approached the vehicle, [Perez] sped away in an apparent attempt to flee. The officer pursued the vehicle to no avail. As the chase neared the Meriden town line, the Berlin police department notified the Meriden police department of the chase and of the fact that [Perez] was approaching the town line. The Berlin police department abandoned the chase when [Perez] reached Meriden.

"Once [Perez] was in Meriden, a Meriden police officer discovered [Perez] driving southbound in a northbound lane. The officer observed [Perez] changing back and forth between the northbound and southbound

see no reason why a writ of error cannot be brought to this court from an order of the Appellate Court.

lanes, almost striking vehicles head on and forcing northbound vehicles off the road. The officer estimated that [Perez] had been driving in that manner for approximately four miles since the Berlin police department [had] abandoned its pursuit. At that time, a second pursuit began between the Meriden police officer and [Perez], who failed to yield and continued to flee in a dangerous manner.

"Throughout the pursuit, [Perez] drove approximately sixty to seventy miles per hour through a densely populated thirty-five mile per hour zone. [Perez] repeatedly drove on the wrong sides of the road and median, forcing traffic onto the sidewalk and into oncoming traffic. Several Meriden police officers assisted with the pursuit by attempting to warn oncoming traffic of [Perez] and by trying unsuccessfully to guide him onto a highway and away from the densely populated area.

"The pursuit ended tragically when [Perez], while traveling southbound in a northbound lane, struck a vehicle [whose driver was] attempting to make a left turn. The driver of the vehicle suffered severe injuries, including massive head and brain injuries, neurological injuries, and massive pelvic and internal injuries. At the scene of the crash, the Meriden police officers found [Perez] frantically trying to escape from [his] vehicle in an apparent attempt to flee on foot. The officers also discovered two passengers in [Perez'] vehicle, one of whom was yelling at [Perez] for having ignored the passenger's requests to stop." Id., 356–57.

In his appeal to the Appellate Court, Perez claimed that the trial court improperly had denied his motion to dismiss for selective prosecution predicated on the state's failure also to prosecute the police officers involved in the chase. See id., 358. In rejecting Perez' claims, the Appellate Court noted, first, that, to prove selective prosecution, a defendant must show that (1)

"others similarly situated have generally not been prosecuted and that he has been singled out," and (2) "he is the victim of invidious discrimination based on impermissible considerations such as race, religion or the exercise of a constitutionally protected right." (Internal quotation marks omitted.) Id., 359. The Appellate Court further stated that, in determining whether two groups are similarly situated for purposes of a selective prosecution claim, the court "must look for persons situated similarly in all *relevant* aspects . . . ." (Emphasis in original; internal quotation marks omitted.) Id. The Appellate Court concluded that, as a matter of law, "in [Perez'] case, the relevant differences between the [two] groups far outweigh the relevant similarities." Id., 360. "[A] criminal suspect [like Perez] in possession of stolen property, fleeing from law enforcement officials, leading officers from two police departments on a high speed chase through a densely populated area and into oncoming traffic, all in an apparent attempt to circumvent the legal repercussions [that] he inevitably faced as a result of his original unlawful activity"; id.; bore no material similarity to the pursuing police officers, who "were authorized by General Statutes § 14-283 (a) and (b) to exceed the posted speed limit and to disregard regulations governing the direction of movement in their pursuit of a fleeing law violator."[3] Id., 360–61.

Perez also claimed on appeal that the trial court had violated his constitutional right to present a defense by denying his request for an evidentiary hearing on his claim of selective prosecution. See id., 362. In rejecting that claim, the Appellate Court stated that "the [trial] court considered [Perez'] offer of proof and concluded,

---

[3] In so concluding, the Appellate Court emphasized that "[i]t [was] not for [that] court to determine whether the police officers, acting under their statutory authority, were negligent or reckless in their pursuit of [Perez]. It [was] only for [that] court to decide whether [Perez] and the Meriden police officers [were] 'similarly situated' for [selective prosecution] purposes." *State* v. *Perez*, supra, 80 Conn. App. 361.

as a matter of law, that he had not and could not make a prima facie showing of selective prosecution." Id., 363. The Appellate Court concluded "that the [trial] court's conclusion was reasonable in that [Perez] had not made a prima facie showing with regard to either prong of the selective prosecution test and as such was not entitled to a hearing. . . . Although [Perez] may have been prepared to prove that the officers were negligent in their pursuit of him, such a showing would have been wholly unrelated to whether there was selective prosecution." Id., 363–64.

Thereafter, the plaintiff, on behalf of Perez, filed a motion for reconsideration en banc. In support of the motion, the plaintiff alleged, inter alia, that, in rejecting Perez' selective prosecution claim, the Appellate Court had ignored an argument in the brief that the plaintiff had filed on Perez' behalf, namely, that, under *State* v. *Scribner*, 72 Conn. App. 736, 742, 805 A.2d 812 (2002), police officers are not immune from liability for exceeding the posted speed limit if, in the act of speeding, they endanger life or property. The plaintiff further asserted that, if the Appellate Court properly had credited this argument, the court necessarily would have concluded that the state had no legitimate basis for failing to prosecute the Meriden police officers. The plaintiff also repeatedly stated that the Appellate Court, in concluding that Perez and the police officers were not similarly situated for purposes of Perez' selective prosecution claim, "ignored the crucial fact that the trial court [had] accepted [Perez'] offer of proof that the police [had] caused the accident." The plaintiff then asserted, in a footnote, that "this [was] not the first time" that the Appellate Court had "dodge[d]" issues raised in a brief that he has submitted. In that same footnote, the plaintiff suggested that the Appellate Court had acted unethically by (1) failing to address purportedly controlling precedent, namely, the *Scrib-*

*ner* case, and (2) not disclosing in its opinion that the trial court had accepted Perez' offer of proof that the police had caused the accident.[4] The plaintiff further stated in the motion for reconsideration en banc that society would be "shocked" by the Appellate Court's conduct in connection with the case, and that, "[p]erhaps there should be outside review of appellate decisions that refuse to address issues . . . ."[5] The motion concluded with a quote from the dissent of Justice Louis D. Brandeis in *Olmstead* v. *United States*, 277 U.S. 438, 485, 48 S. Ct. 564, 72 L. Ed. 944 (1928), in which Brandeis warned that unlawful conduct by the government breeds contempt for the law.

The Appellate Court subsequently issued a five page order in which it denied the motion for reconsideration en banc but, sua sponte, granted reconsideration by the original panel.[6] The order of the Appellate Court stated

---

[4] With respect to these two allegations, the plaintiff stated in the motion: "It is unethical for a lawyer to make a false statement of material fact and also there are circumstances where failure to make a disclosure (of a material fact) is the equivalent of an affirmative misrepresentation. . . . Since it is unethical for a lawyer to fail to disclose a material fact in a brief, then surely it is also unethical for a court to fail to disclose material facts in its decision such as here where regarding the first issue the [Appellate Court] panel failed to disclose the material fact that the trial court accepted as true [Perez'] offer of proof that the police [had] caused the accident. Further, since it is unethical for a lawyer to fail to disclose controlling legal precedents to a court . . . then surely it is unethical for a court to fail to address controlling precedent in its decision, such as in the present case [in which] the panel failed to address the *Scribner* case." (Citations omitted; internal quotation marks omitted.)

[5] With respect to these two specific assertions, the plaintiff stated in the motion: "The [Appellate Court] panel's decision to ignore critical facts and precedent is similar to a doctor ignoring critical parts of a[n] X-ray or MRI. Society would be shocked upon learning that a doctor did what the panel did in the present case. Perhaps there should be outside review of appellate decisions that refuse to address issues, such as having the Connecticut Law Tribune institute a regular series in which lawyers critique decisions that dodge issues, facts and precedents."

[6] The Appellate Court thereafter issued a superseding opinion; *State* v. *Perez*, supra, 82 Conn. App. 100; in which the court again affirmed the judgment of the trial court. See id., 111. In its superseding opinion, the

that the "motion [for reconsideration en banc] is predicated predominantly upon [that court's] silence as to the issue of causation of the accident. Specifically, [the plaintiff] insists that the trial court found, through its acceptance of [Perez'] offer of proof, that the police caused the accident. The . . . motion for reconsideration en banc, much like [the plaintiff's] initial brief before [the Appellate] Court, is replete with references to 'the fact that the police caused the accident.' [The Appellate Court's] review of the record indicates that such repeated characterizations are not only blatantly incorrect, but constitute a material misrepresentation made by [the plaintiff] to [the Appellate] Court." In a footnote appended to the preceding sentence, the Appellate Court cited rule 3.3 (a) of the Rules of Professional Conduct and a portion of the commentary thereto.[7] The Appellate Court then stated that "[a] review of the relevant transcripts reveals that, contrary to [the plaintiff's] repeated assertions, the trial court never made a finding that the police caused the accident. Rather, it accepted [Perez'] offer of proof, in which it was represented that the police had 'been sued by the family of the victim,' and in that suit, the victim . . . alleged that the police were the cause of the accident. The precise nature of this acceptance is significant. When the [trial] court accepted [Perez'] offer of proof, it accepted the fact that the victim alleged that the police caused the accident. It did not accept that causation itself had been established.

Appellate Court expressly addressed and rejected the plaintiff's contention that *Scribner* compelled the conclusion that Perez and the Meriden police officers were similarly situated for purposes of Perez' selective prosecution claim. Id., 108.

[7] The footnote in the Appellate Court's order provides: "Rule 3.3 (a) of the Rules of Professional Conduct, which requires attorney candor toward the tribunal, provides in relevant part: 'A lawyer shall not knowingly: (1) [m]ake a false statement of material fact or law to a tribunal . . . .' The commentary further provides that '[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal.'"

"To argue that the trial court made a finding of fact that the police were the cause of the accident, as [the plaintiff] does repeatedly in the motion before [the Appellate Court], is to misrepresent precisely what transpired when this matter was before the trial court.

\* \* \*

"[In other words, to] represent to [the Appellate] Court that the trial court made a finding of fact that the police were the cause of the accident is an attempt to represent that the trial [court] made findings which [it] did not in fact make. [The Appellate Court] find[s] this mischaracterization of the trial court's statements on the part of [the plaintiff] very disturbing."

Finally, the Appellate Court stated: "We are compelled to address [the plaintiff's] scurrilous and baseless attack on the integrity of [the Appellate] Court. Lawyers in this state are required to demonstrate respect for the legal system and for those who serve it, including judges. . . . The allegations [in the] motion for reconsideration en banc [flout] this fundamental principle. Lawyers are not merely representative of clients; they are officers of the legal system. [The plaintiff's] conduct before [the Appellate] Court reflects a contempt for not only our rules of professional conduct, but, more importantly, his obligations as a member of the bar." (Citation omitted.) The Appellate Court concluded: "Nevertheless, the . . . motion presents points which the [Appellate Court] panel will address in its forthcoming opinion."

In his writ of error, the plaintiff claims that the Appellate Court's finding that he had violated rule 3.3 (a) of the Rules of Professional Conduct and its statements criticizing the plaintiff for his unprofessional conduct each constituted a disciplinary sanction, tantamount to a reprimand, for which he was not afforded prior notice or the opportunity to be heard. The plaintiff further

claims that the Appellate Court's finding and criticism are not supported by the record. The plaintiff seeks an order of this court directing the Appellate Court to vacate the challenged finding and statements.

I

We first address the plaintiff's claim that the Appellate Court's (1) finding of a violation of a disciplinary rule and (2) statements critical of the plaintiff each constituted a disciplinary sanction for which the plaintiff was not afforded notice and an opportunity to be heard. It is well established that "[j]udges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . It is their unique position as officers and commissioners of the court . . . which casts attorneys in a special relationship with the judiciary and subjects them to its discipline." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 838, 633 A.2d 296 (1993). It is also well established "that a sanction for professional misconduct adversely affects an attorney's vested right to practice law. . . . Thus, attorneys subject to disciplinary proceedings are entitled to due process of law. . . . We traditionally have recognized that the right to appellate review of an order imposing sanctions is part and parcel of those due process rights accorded to a disciplined attorney." (Citations omitted; internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 312, 796 A.2d 516 (2002); see also *Burton* v. *Mottolese*, 267 Conn. 1, 19, 835 A.2d 998 (2003) ("[b]ecause a license to practice law is a vested property interest and disciplinary proceedings are adversary proceedings of a quasi-criminal nature, an attorney subject to discipline is entitled to due process of law" [internal quotation marks omitted]), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). "As a procedural matter, before imposing any . . . sanctions [on an attorney], the court

must afford the . . . attorney a proper hearing . . . . There must be fair notice and an opportunity for a hearing on the record. . . . This limitation . . . is particularly appropriate with respect to a claim of bad faith or frivolous pleading by an attorney, which implicates his [or her] professional reputation." (Citations omitted; internal quotation marks omitted.) *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999).

"In attorney disciplinary proceedings, two interests are of paramount importance. On the one hand, we must not tie the hands of grievance committees and . . . courts with procedural requirements so strict that it becomes virtually impossible to discipline an attorney for any but the most obvious, egregious and public misconduct. On the other hand, we must ensure that attorneys subject to disciplinary action are afforded the full measure of procedural due process required under the constitution so that we do not unjustly deprive them of their reputation and livelihood." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 267 Conn. 19–20.

"To satisfy the requirements of due process, attorneys subject to disciplinary action must receive notice of the charges against them. In the context of attorney misconduct proceedings, this court previously has stated that notice must be sufficiently intelligible and informing to advise the . . . attorney of the accusation or accusations made against [her], to the end that . . . [she] may prepare to meet the charges against [her] . . . . If this condition is satisfied, so that the accused is fully and fairly apprised of the charge or charges made, the complaint is sufficient to give [her] an opportunity to be fully and fairly heard . . . ." (Internal quotation marks omitted.) Id., 20.

We turn first to the plaintiff's claim that the Appellate Court's finding that he had violated rule 3.3 (a) of the Rules of Professional Conduct constituted a disciplinary sanction. The plaintiff argues that the Appellate Court's finding was tantamount to a reprimand, despite the fact that the Appellate Court did not use that term, because the consequences of a judicial finding of professional misconduct are no less serious than a reprimand. The defendants maintain that a finding by a court that an attorney has violated a disciplinary rule is not the equivalent of a reprimand unless the court states explicitly that it is reprimanding the offending attorney. The defendants contend, therefore, that, because the order of the Appellate Court contained no language expressly reprimanding or otherwise sanctioning the plaintiff, its finding that the plaintiff had violated rule 3.3 (a) of the Rules of Professional Conduct was not a sanction. Under the defendants' view, therefore, the Appellate Court was under no obligation to afford the plaintiff notice and an opportunity to be heard before making its finding of a violation of the disciplinary rule. We reject the defendants' reasoning as unduly formalistic.[8]

Although this case presents a matter of first impression for this court, a majority of the federal circuit courts of appeals have concluded that, for purposes of appeal, a judicial finding of professional misconduct is tantamount to an official sanction, irrespective of whether the finding is made in the context of a formal grievance proceeding. See, e.g., *Butler* v. *Biocore Medical Technologies, Inc.*, 348 F.3d 1163, 1168 (10th Cir. 2003) (adopting "position taken by the majority of the circuits . . . that an order finding attorney misconduct but not imposing other sanctions is appealable . . .

---

[8] We see no reason to disagree with the defendants' contention, however, that the Appellate Court was not intending to reprimand or otherwise to sanction the plaintiff when it found that he had violated rule 3.3 (a) of the Rules of Professional Conduct.

even if not labeled as a reprimand"); *United States* v. *Talao*, 222 F.3d 1133, 1138 (9th Cir. 2000) (finding by court that attorney violated specific rule of professional conduct constituted sanction and, therefore, was appealable); *Walker* v. *Mesquite*, 129 F.3d 831, 832–33 (5th Cir. 1997) ("the importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for the appeal of a court order finding professional misconduct"); *Sullivan* v. *Committee on Admissions & Grievances*, 395 F.2d 954, 956 (D.C. Cir. 1967) (attorney had standing to appeal court's determination that he had committed several ethical violations, notwithstanding fact that no sanctions were imposed, because that determination "reflect[ed] adversely on [the attorney's] professional reputation"). But see *In re Williams*, 156 F.3d 86, 92 (1st Cir. 1998) (attorney may appeal order damaging to his or her professional reputation only when challenged order is "expressly identified as a reprimand"), cert. denied sub nom. *Cannon* v. *Williams*, 525 U.S. 1123, 119 S. Ct. 905, 142 L. Ed. 2d 904 (1999). The rationale underlying the majority view is equally applicable to the issue raised by the present case: "a rule requiring an explicit label as a reprimand ignores the reality that a finding of misconduct damages an attorney's reputation regardless of whether it is labeled as a reprimand and, instead, trumpets form over substance." *Butler* v. *Biocore Medical Technologies, Inc.*, supra, 1169.

The analysis of the Ninth Circuit Court of Appeals in *United States* v. *Talao*, supra, 222 F.3d 1133, is particularly instructive. In *Talao*, the Court of Appeals considered an appeal by Robin Harris, an assistant United States attorney, challenging a finding by the District Court that she had violated the California Rules of Professional Conduct. See id., 1135. The Court of Appeals first addressed the issue of whether the District Court's

finding provided a basis for an appeal. See id., 1137–38. In concluding that it did; id., 1138; the Court of Appeals distinguished the District Court's finding of ethical misconduct from "mere judicial criticism"; id., 1137; explaining: "The district court in the present case . . . did more than use 'words alone' or render 'routine judicial commentary.' Rather, the district court made a finding and reached a legal conclusion that Harris knowingly and wilfully violated a specific rule of ethical conduct. Such a finding, per se, constitutes a sanction. The district court's disposition bears a greater resemblance to a reprimand than to a comment merely critical of inappropriate attorney behavior. A reprimand generally carries with it a degree of formality. The requisite formality in this case is apparent from the fact that the [district] court found a violation of a particular ethical rule, as opposed to generally expressing its disapproval of a lawyer's behavior. Further, the district court's conclusion that Harris violated [the California Rules of Professional Conduct] carries consequences similar to the consequences of a reprimand. If the court's formal finding is permitted to stand, it is likely to stigmatize Harris among her colleagues and potentially could have a serious detrimental effect on her career. In addition, she might be subjected to further disciplinary action by the California Bar. We have no reluctance in concluding that the district court's finding of an ethical violation by Harris is an appealable sanction." Id., 1138.

For the same reasons, we conclude that the Appellate Court's finding that the plaintiff had violated rule 3.3 (a) of the Rules of Professional Conduct constituted a disciplinary sanction tantamount to a reprimand. Because the Appellate Court did not afford the plaintiff notice and an opportunity to be heard before issuing its finding, principles of due process dictate that the finding be vacated.[9]

---

[9] The defendants contend that, even if the finding of the Appellate Court was the equivalent of a reprimand, the plaintiff's due process rights were

We do not agree with the plaintiff, however, that he also was entitled to notice and an opportunity to be heard with respect to the other criticism that the Appellate Court had leveled against him. On the contrary, "not every criticism by a judge that offends a lawyer's sensibilities is a sanction." *In re Williams*, supra, 156 F.3d 90. Courts, of course, must have considerable leeway to express their displeasure with the conduct of counsel. Thus, judges "retain the power to comment, sternly when necessary, on a lawyer's performance . . . . [H]ard-nosed and even caustic criticism of a lawyer's behavior, when intended to put a stop to that lawyer's misconduct, or even when the criticism is intended to control less offensive attorney behavior" simply constitutes "courtroom administration . . . ." Id., 98 (Rosenn, J., dissenting). We recognize that judicial candor is necessary if courts are to ensure the proper conduct of judicial proceedings, and we do not

---

not violated because (1) the plaintiff "was on notice of [the existence of] rule 3.3 of the Rules of Professional Conduct," and (2) "there was no issue that a hearing would have illuminated" because the Appellate Court already "had all that it needed in order to determine whether [the plaintiff's] characterization [of the record] was accurate . . . ." In support of their contention, the defendants rely primarily on the reasoning in two federal Circuit Court of Appeals cases in which those courts held that notice and a hearing were not required before the imposition of attorney sanctions under rule 38 of the Federal Rules of Appellate Procedure, which prohibits an attorney from filing a frivolous appeal. See *Romala Corp.* v. *United States*, 927 F.2d 1219, 1226 (Fed. Cir. 1991); *Hill* v. *Norfolk & Western Railway Co.*, 814 F.2d 1192, 1201–1202 (7th Cir. 1987). Subsequent to the decisions in those cases, however, rule 38 was amended to require notice and "a reasonable opportunity to respond" before sanctions can be imposed under the rule. See Fed. R. App. P. 38. More importantly, as we have explained, attorneys subject to disciplinary action are constitutionally entitled to "fair notice and an opportunity for a hearing on the record." (Internal quotation marks omitted.) *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 239 Conn. 393. The defendants' argument, therefore, misses the point. The issue is not whether the plaintiff was on notice of rule 3.3 of the Rules of Professional Conduct or whether the Appellate Court was aware of all the facts necessary to make a finding that the plaintiff had violated that rule. The issue, rather, is whether the plaintiff was afforded, inter alia, the opportunity to provide the court with his side of the story. Plainly, he was not.

intend to deter or otherwise to chill judges from expressing themselves forthrightly and, when necessary, forcefully, to achieve that end. In the present case, although the Appellate Court's statements criticizing the plaintiff were pointed and strong, those statements did not purport to represent a finding that the plaintiff had violated the Rules of Professional Conduct.[10] Therefore, they reasonably cannot be characterized as a reprimand or other sanction.

We note, moreover, that we, too, strongly disapprove of the plaintiff's wholly unwarranted attack on the integrity of the Appellate Court. Indeed, we agree fully with the Appellate Court's characterization of the plaintiff's conduct in this regard and with that court's justifiably harsh criticism of the plaintiff for that conduct.

## II

Although we have concluded that the plaintiff is entitled to have the Appellate Court's finding of a disciplinary rule violation vacated, we also consider the plaintiff's contention that the facts do not support that finding because the plaintiff could be subject to future sanctions predicated on the same conduct.[11] We there-

[10] The plaintiff contends that the statements in which the Appellate Court criticized him did constitute a finding of a violation of the Rules of Professional Conduct, essentially because the Appellate Court referred to those rules in its statements. Not every reference to the Rules of Professional Conduct by a judge who has criticized an attorney's conduct represents a finding of a violation of those rules. We deem the Appellate Court's statements, which were couched in general terms, to be a strongly worded expression of its disapproval of the statements contained in the motion for reconsideration en banc, and not a finding of a violation of the Rules of Professional Conduct.

[11] As we have indicated; see footnote 8 of this opinion; there is no reason to believe that the Appellate Court intended to reprimand or otherwise to sanction the plaintiff when it found that he had made a misrepresentation of material fact to that court in violation of rule 3.3 (a) of the Rules of Professional Conduct. Nevertheless, the plaintiff could be subject to a future sanction based on that conduct because any person may file a complaint alleging attorney misconduct, a possibility that we cannot disregard in the present case. Furthermore, although our resolution of the plaintiff's due

fore must determine whether the Appellate Court reasonably concluded that the plaintiff knowingly had made a misrepresentation of material fact to that court concerning the findings of the trial court in the matter of *State* v. *Perez* (AC 23457).[12]

The following additional facts and procedural history are necessary to our resolution of this issue. In Perez' motion to dismiss the information on the ground of selective prosecution, which the plaintiff had filed on Perez' behalf, Perez alleged, inter alia, that the Meriden police officers involved in the chase also had caused the accident by operating their vehicles at an unreasonably high rate of speed and by failing to terminate their pursuit of Perez.[13] On the basis of this allegation, Perez

process claim requires that the Appellate Court's finding be vacated, the plaintiff's challenge to the evidentiary sufficiency of that finding is grounded in a legitimate concern for his reputation. We therefore are obliged to address the plaintiff's evidentiary sufficiency claim.

[12] As a reason for declining review of the plaintiff's claim of evidentiary insufficiency, the concurring justice asserts that a determination of the facts regarding the plaintiff's conduct would be necessary in the event that future disciplinary action is taken against the plaintiff on the basis of the conduct that is the subject of this appeal. We do not agree with the concurring justice. The evidence that provided the basis for the Appellate Court's adverse finding, namely, the transcript of the hearing on Perez' motion to dismiss and the motion for reconsideration en banc that the plaintiff had filed with the Appellate Court on Perez' behalf, is undisputed and a matter of record.

[13] For example, Perez asserted in the motion to dismiss that "the attached police reports indicate that the state is accusing [him] of driving his car at a high [rate of] speed while the Meriden police were driving *at least sixty miles per hour* chasing [him] not because they initially saw [him] commit a crime but because his car had an allegedly stolen license plate. . . . The police reports indicate that the Meriden police . . . were driving their police cruisers at least sixty miles per hour through a residential-business section of Meriden, and at times driving on the wrong side of a median in the center of the street and at times going through red lights, chasing [Perez] when he then apparently hit the victim's auto[mobile] [whose driver] was attempting to make a left-hand turn. . . . [T]he posted speed limit is thirty-five miles per hour, the roads are sometimes hilly so that there is not always a clear view of oncoming traffic . . . . [Lieutenant] Donald Parker of the Meriden police department was also in pursuit and initially authorized the high-speed chase and failed to terminate the pursuit, which if he had there

maintained that he and the pursuing officers were similarly situated with respect to their involvement in the accident and, therefore, that those officers should have been prosecuted, along with Perez, for their role in causing the accident. Perez further claimed that he had been singled out for prosecution on the basis of an "arbitrary and unjustifiable standard," namely, because he was not a police officer.

The plaintiff sought an evidentiary hearing to establish Perez' claim. The plaintiff also appended several documents to Perez' motion to dismiss, including copies of: four police reports of the accident; the accident victim's notice of intent to sue the city of Meriden, the Meriden police chief and the officers involved in the chase; the arrest warrant for William Scribner, a New Milford police officer convicted of negligent homicide with a motor vehicle in connection with a fatal accident caused by Scribner's negligent operation of his cruiser while responding to an emergency call; and the Connecticut uniform statewide pursuit policy.

The trial court thereafter commenced a hearing on Perez' motion to dismiss. The court indicated that the first matter to be decided was whether Perez was entitled to an evidentiary hearing on the motion. The plaintiff requested that the court accept, as an offer of proof, the factual assertions contained in Perez' motion and the attached documents. Although the court acknowl-

would have not been any accident or injuries to the victim." (Emphasis in original.) Perez further asserted in his motion that the conduct of the officers was reckless, and that, under well settled law, when an accident is caused by the negligence of more than one motor vehicle operator, each such operator may be held responsible for the accident. Finally, Perez quoted from *State* v. *Leroy*, 232 Conn. 1, 6, 653 A.2d 161 (1995), in noting that "proximate cause in the criminal law does not necessarily mean the last act of cause, or the act in point of time nearest to death. The concept of proximate cause incorporates the notion that an accused may be charged with a criminal offense even though his acts were not the immediate cause of death." (Internal quotation marks omitted.)

edged that the material facts underlying the motion did not appear to be in dispute, the court indicated that it would accept Perez' offer of proof. The plaintiff argued that Perez had alleged facts sufficient to warrant an evidentiary hearing. The state disagreed, however, claiming that, even if the accuracy of Perez' allegation that the pursuing officers also bore responsibility for causing the accident was assumed, that allegation was insufficient to satisfy the threshold showing necessary to justify an evidentiary hearing. Thereafter, the court stated: "The bottom line . . . is [that] I'm going to accept everything that you have made for your offer of proof as being, in fact, the circumstances that exist, the police report, the fact that the police officers in the city of Meriden have been sued by the family of the [accident] victim, the high speed pursuit policies of both the state and [the city of] Meriden, and even accepting . . . every bit of your offer of proof, I do not believe, and I frankly feel that it's quite clear in my mind, that there is no showing here that rises to the level entitling you to a hearing [on the selective prosecution claim]."

The trial court further stated: "Whether or not the police are negligent as compared to whether or not there is selective prosecution, those are completely different criteria . . . . [T]his is not a situation [in which] the Meriden police were similarly situated to . . . Perez, nor do I believe that the prosecution of . . . Perez to the exclusion of the Meriden police was based upon any impermissible discriminatory grounds as set forth in the cases. And for those reasons, I'm going to, number one, deny your request for an evidentiary hearing and, number two, deny your motion to dismiss for the reasons [that] I have just set forth." Immediately thereafter, the following colloquy between the plaintiff and the trial court ensued:

"[The Plaintiff]: Just for the record . . . Your Honor did say that you were accepting all my motions and my written offer, one was [that] the speed limit was thirty-five [miles per hour]?

"The Court: Anything that was contained in the police report.

"[The Plaintiff]: And my motion?

"The Court: And your motion. Factual representation."

In Perez' motion for reconsideration en banc that the plaintiff filed with the Appellate Court, the plaintiff claimed that, in deciding Perez' appeal, the Appellate Court had ignored "facts found by the trial court in [the trial court's] acceptance of [Perez'] offer of proof." In particular, the plaintiff claimed that the Appellate Court panel had ignored the *Scribner* case and the significance of the trial court's ruling "that it was accepting [Perez'] entire offer of proof as true, including the victim's claims that the police caused the accident due to their carelessness, negligence and recklessness of driving at high speed chasing [Perez]." The plaintiff further stated: "The [Appellate Court] panel in the first part of its decision affirming the trial court's decisions erroneously made findings of fact that the trial court never found. . . . [T]he trial court stated that the facts [that] it found were the facts that it accepted in [Perez'] offer of proof. These facts clearly included the fact, as the victim claimed, that the police caused the accident by engaging in a high speed chase of [Perez] . . . ." The plaintiff thereafter contended that, "[t]he panel in weighing all relevant aspects as to whether [Perez] and the police were similarly situated also ignored the crucial fact that the trial court accepted [Perez'] offer of proof that the police [had] caused the accident." Finally, the plaintiff argued that, "[c]onsidering the crucial facts that the police [had] caused the accident as found by

the trial court and that [the police] had no immunity as held in *Scribner*, the panel obviously erred in ruling that [Perez] had not made a prima facie showing."

In its order denying the motion for reconsideration en banc, the Appellate Court emphasized the fact that, throughout that motion, the plaintiff repeatedly had asserted that, by virtue of the trial court's acceptance of the offer of proof, that court had "found" that the police had "caused" the accident. The Appellate Court rejected those statements as unfounded, explaining that the record of the proceedings on Perez' motion to dismiss indicated that the trial court had accepted the fact that the accident victim had filed a notice of her intent to sue the police for their alleged negligent or reckless conduct, rather than the fact that the police were a cause of the accident, as the victim had alleged in her notice of intent to sue. This distinction provided the primary basis for the Appellate Court's conclusion that the plaintiff had misrepresented a material fact to the court in violation of rule 3.3 (a) of the Rules of Professional Conduct.

In reviewing the finding of the Appellate Court, "our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Internal quotation marks omitted.) *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 698, 669 A.2d 1202 (1996). Furthermore, in a matter involving attorney discipline, no sanction may be imposed unless a violation of the Rules of Professional Conduct has been established by clear and convincing evidence. E.g., *Burton* v. *Mottolese*, supra, 267 Conn. 38; *Lewis* v. *Statewide Grievance Committee*, supra, 698. "[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and

the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 290–91, 715 A.2d 712 (1998).

Applying this heightened standard of proof, we are not persuaded that the record supports a finding that the plaintiff, in the motion for reconsideration en banc, knowingly made a misrepresentation of material fact to the Appellate Court regarding the trial court's ruling on Perez' motion to dismiss. The record of the hearing on the motion to dismiss indicates that the trial court accepted Perez' offer of proof and, therefore, for purposes of the hearing, also accepted as true the factual allegations contained therein. Although the plaintiff consistently referred to those accepted facts as having been "found" by the trial court, the motion for reconsideration en banc also is replete with references to the offer of proof. It is apparent, therefore, that the plaintiff was not attempting to suggest that the trial court actually had "found" any facts but, rather, that the court had accepted, for purposes of the hearing, the factual allegations of Perez' offer of proof.

With respect to the issue of whether the trial court accepted, as part of the offer of proof, that the pursuing officers were a cause of the accident, the record is not crystal clear. To establish such causation for purposes of the hearing, the plaintiff relied primarily on the accident victim's notice of intent to sue in which she alleged that her injuries had been caused by the negligent or reckless conduct of the police. Although certain comments by the trial court indicate that its acceptance of the offer of proof on that issue was limited to its

acceptance merely of the fact that the victim had filed a notice of intent to sue, other comments by the trial court and counsel are consistent with an understanding that the court had accepted as true all of the factual allegations contained in Perez' motion to dismiss and the accompanying materials. The issue is clouded, moreover, by the fact that the question of whether the police had "caused" the accident in a "but for" sense was, as the state indicated, essentially immaterial to the question of whether the police and Perez were similarly situated for purposes of Perez' claim of selective prosecution. The limited importance of that issue also is underscored by the fact that, as the trial court itself noted, the events leading up to and culminating in the pursuit were essentially undisputed, so that whether the court accepted, for purposes of the hearing only, that the police were a cause of the accident, had little, if any, bearing on the court's ruling on the motion to dismiss.[14] Because the record is ambiguous on this point, we cannot say that it supports a finding, by clear and convincing evidence, that the plaintiff knowingly made a misrepresentation of material fact to the Appellate Court in violation of rule 3.3 (a) of the Rules of Professional Conduct.[15]

The writ of error is granted in part and the case is remanded to the Appellate Court with direction to

[11] Certainly, the *plaintiff* believed that the causation issue was a central one for purposes of Perez' selective prosecution claim. As is evident from the ruling of the trial court and the decision of the Appellate Court, however, the extent to which the conduct of the police was a legal cause of the accident had virtually no bearing on the decisive issue of whether Perez and the pursuing police officers were similarly situated for purposes of Perez' selective prosecution claim.

[15] We note that, because there is no reason to believe that the Appellate Court was intending to reprimand or otherwise to sanction the plaintiff when it found that he had violated rule 3.3 (a) of the Rules of Professional Conduct; see footnote 8 of this opinion; the Appellate Court undoubtedly was not applying the "clear and convincing" standard of proof applicable to attorney disciplinary matters when it made that finding.

vacate that part of the order in *State* v. *Perez* (AC 23457) in which that court found that the plaintiff knowingly had made a misrepresentation of material fact in violation of rule 3.3 (a) of the Rules of Professional Conduct. The writ of error is denied in all other respects.

In this opinion BORDEN, NORCOTT and ZARELLA, Js., concurred.

VERTEFEUILLE, J., concurring. I agree with and join part I of the majority opinion. I do not join part II of the majority opinion because I find that part to be premature, and perhaps unnecessary. It is not evident to me that the Appellate Court will pursue any disciplinary action against the plaintiff in error, Francis T. Mandanici, a senior assistant public defender, and, if it were to do so, a determination of the facts regarding his conduct could be made only after the hearing that we have concluded must be held.