DENISE ANSELL *v.* STATEWIDE GRIEVANCE
COMMITTEE
(AC 25255)

Schaller, DiPentima and Peters, Js.

Argued December 1, 2004—officially released February 8, 2005

*Joseph D. Courtney*, the appellant (plaintiff).

*Cathy A. Dowd*, assistant bar counsel, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Denise Ansell, an attorney licensed to practice of law in Connecticut, appeals from the judgment of the trial court dismissing her appeal from the reprimand issued to her by the defendant, the statewide grievance committee (committee). On appeal, Ansell claims that the court improperly concluded that (1) there was no legal significance to the

fact that those judges presiding at the time of the ethics violations failed to reprimand her, (2) the evidence supported a reprimand under rule 3.4 (5) of the Rules of Professional Conduct, and (3) the evidence supported a reprimand under rule 8.4 (3) of the Rules of Professional Conduct. We affirm the judgment of the trial court.

This case has its origin in a contentious family case in which Ansell and the complainant, attorney Gary Traystman, represented opposing parties. During the proceedings before the trial court, Ansell's predecessor, attorney James K. Kelley, filed a motion to preclude the psychological evaluation by and testimony of Ronald D. Anderson, alleging that Traystman had improper ex parte communications with Anderson. In cross-examining Anderson at a hearing on the motion, Kelley elicited that Anderson had spoken with Traystman regarding scheduling matters only and that the substantive information allegedly provided by Traystman had in fact come directly from his clients. Ansell was thereafter retained in lieu of Kelley.

On August 15, 2001, before *Hon. Robert I. Berdon*, judge trial referee, Ansell raised the issue of ex parte communication between Anderson and Traystman, stating: "There was, also, a question, as I recall, with the last evaluator that brought in the case of *In re David W.* [254 Conn. 676, 759 A.2d 89 (2000)] because, apparently, there were communications ex parte between the evaluator and . . . attorney Traystman and information provided to him. It was not communicated to counsel for [Ansell's client], as she's reflected in the file, and this was one of the issues on appeal, as well." When asked by the court what kind of information the ex parte communication had involved, Ansell was initially unable to answer. When pressed again by Traystman and the court as to the nature of the ex parte communication, Ansell stated: "I was not prepared to argue this today. If the court would like to give me a

few moments, I can go through the transcripts and I'll be very happy to point out the information that attorney Kelley, I believe, brought before Judge Foley his—I believe there was a motion filed. Since I was not trial counsel, it makes it a little bit more difficult for me, and Mr. Kelley isn't here. There was a motion filed to preclude Dr. Anderson's testimony as a result of that information, and I could find that information, probably, in one of the four transcripts that I have."

On August 20, 2001, the parties appeared before Judge McLachlan for a hearing on whether Anderson's evaluation should be updated. During that hearing, Ansell again raised the issue of ex parte communications, stating: "[P]art of the appealable issues, which are preserved per Justice—per the—well, per Justice Berdon's most recent letter to [the chief clerk of the appellate courts] is that . . . Anderson was subject to ex parte communication with both the guardian ad litem . . . and attorney Traystman, rendering a problem." Later, the following colloquy took place between Ansell and the court:

"[The Plaintiff]: But my objection to Ron Anderson was that, as I recall reading the transcript, he was given materials that were not agreed upon by all the parties to be given to him. And there were communications, admitted communications between him and attorneys Traystman and [Susan] Connolly, which were unbeknownst to other counsel, which were objected to.

"The Court: But did they have anything to do—

"[The Plaintiff]: And since Judge Keller's—

"The Court:—did they have anything to do—this is not a juvenile matters proceeding—did they have anything to do with anything other than scheduling, the communications with—

"[The Plaintiff]: Yes, Your Honor.

"The Court: And what—

"[The Plaintiff]: That's—

"The Court:—do you claim they had to do with?

"[The Plaintiff]: I don't have the transcripts in front of me, Your Honor. They're voluminous. And I'm sorry—

"The Court: Well, that's—that's not good—

"[The Plaintiff]:—but I don't have them memorized.

"The Court:—that's not—that's not good enough, attorney Ansell. You think there's something in the transcript, but you can't tell me what it is. Is that what you're really telling me?

"[The Plaintiff]: I just told you what it was. That they had communicated—

"The Court: No. I asked you if it had something to do with something other than scheduling. And you told me, yes.

"[The Plaintiff]: Yes.

"The Court: And I said, what was it? And you told me you didn't know.

"[The Plaintiff]: It had to do with information. They were giving information to . . . Anderson regarding the case, the history of the case."

At the close of the hearing Judge McLachlan ordered that Anderson update the psychological evaluation.

On August 24, 2001, Traystman sent a facsimile to Ansell expressing surprise that she had represented to Judge Berdon and Judge McLachlan that he had had ex parte communications with Anderson. He requested a copy of the transcript that confirmed the communication and warned her that he would be filing a grievance against her should the transcript not confirm her claim.

Ansell replied by facsimile the same day, stating that she did not believe Traystman's surprise and attaching a copy of the motion to preclude originally filed by Kelley. Traystman filed a grievance with the committee on September 10, 2001.

On September 14, 2001, the parties again appeared before Judge McLachlan, and Ansell once again raised the issue of ex parte communications, stating that she had the supporting transcript excerpts. The following exchange ensued:

"[Attorney Traystman]: Your Honor, I would love to see those transcripts of what attorney Ansell claims was the testimony that had to do with an affirmative finding that there was ex parte communication between myself and Dr. Anderson. Is she indicating to the court right now before you that she has transcripts that confirm that I had ex parte communication?

"The Court: Was that your claim?

"[The Plaintiff]: No, Your Honor. I said that there was conflict between the parties regarding ex parte communication and that the claim was that that evaluation had been tainted."

Ansell proceeded to read from the transcript of the hearing where Kelley cross-examined Anderson, who testified that the only communication between him and Traystman concerned scheduling.

The court again asked Ansell what information Traystman improperly gave Anderson. Following Ansell's response, the court stated: "All right, and this is the last time I'm going to ask this question. What specific information did you claim Mr. Traystman improperly supplied to Dr. Anderson?" Ansell replied that her predecessor and client had initially claimed that background reports had been supplied, but that it had later been determined that those reports were given

to Anderson directly by Traystman's clients. Thereupon, Traystman directed the court's attention to the fact that Ansell had indicated to Judge Berdon and to Judge McLachlan that her information on the ex parte communication came from the transcripts. The court replied, "And I've asked her that three times, and she has not— the only thing she has told me [was that] there was some dispute about information."

On November 5, 2001, the New London judicial district grievance panel found probable cause to believe that Ansell violated rules 3.1, 3.3 (a) (1) and (4), 3.4 (5) and 8.4 (1) and (3). The reviewing committee conducted a hearing on January 10, 2002, at which Ansell, with counsel, and Traystman were present, and testimony was heard from Kelley, Ansell and Ansell's client in the family case. The reviewing committee issued its decision May 9, 2003, finding by clear and convincing evidence that Ansell had violated rules 3.3 (a) (1), 3.4 (5) and 8.4 (3) and issued a reprimand accordingly. On June 2, 2003, Ansell filed a request for review, which was considered by the committee on June 19, 2003. The committee concluded that the reviewing committee correctly determined that Ansell had violated rules 3.4 (5) and 8.4 (3), but erred in finding she had violated rule 3.3 (a) (1) and, accordingly, dismissed the finding as to that rule.

Ansell appealed from the committee's determination to the Superior Court. By memorandum of decision dated March 1, 2003, the court determined that it could not "find that the imposition of the reprimand was not supported by substantial evidence or involved a clearly erroneous application of law" and dismissed the appeal. This appeal followed.

"[I]n reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder.

Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct. . . . Additionally, in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct] is clear and convincing evidence. . . . The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof. . . .

"[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Citation omitted; internal quotation marks omitted.) *Shelton* v. *Statewide Grievance Committee*, 85 Conn. App. 440, 443–44, 857 A.2d 432, cert. granted on other grounds, 272 Conn. 914, 866 A.2d 1285 (2005).

I

Ansell first claims the court improperly concluded that there was no legal significance to the fact that those judges presiding at the time of the ethics violations failed to reprimand her. She argues that the "absence of disciplinary action by Judge Berdon and Judge McLachlan [was], in effect, a determination that she did not violate the Rules of Professional Conduct." She contends that she is not arguing that the committee lacks jurisdiction, but that it failed to consider the significance of the courts' inaction. It is her position that the

lack of sanction by the courts is clear evidence that the reviewing committee's logic was flawed. In essence, she asks this court to hold that when a trial court fails to sanction an attorney for alleged misconduct committed before the trial court, the committee should defer to the court's inaction because of the court's inherent power to regulate attorney conduct. We are not persuaded.

"It is well established that [j]udges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline the members of the bar." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 451, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001). In exercising this power, however, "the judges have authorized grievance panels and reviewing committees to investigate allegations of attorney misconduct and to make determinations of probable cause." (Internal quotation marks omitted.) *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 444, 797 A.2d 1081 (2002). Practice Book § 2-47 (a) provides in relevant part that "[p]resentment of attorneys for misconduct *whether or not the misconduct occurred in the actual presence of the court,* shall be made by written complaint of the statewide grievance committee or a reviewing committee. . . ." (Emphasis added.) When the "misconduct occurs in the actual presence of the court, the . . . committee . . . shall defer . . . *if the court chooses to exercise its jurisdiction.*" (Emphasis added.) Practice Book § 2-45.

Although Ansell's conduct occurred before the Superior Court, the courts did not choose to exercise their inherent authority, and neither the trial court nor we can properly infer from the courts' silence a determination of no misconduct. See Practice Book § 2-32 (a) (2) (F) (grievance complaint may be dismissed if court made finding of misconduct, determined no misconduct

occurred or directed alleged misconduct not be referred to committee). Furthermore, the apparent conflict Ansell sees between the exercise of disciplinary power by the court versus the committee, is better understood as a relationship in which the committee assists the court in its duty to safeguard the administration of justice, especially when the court may be unable to act or may lack a proper overview of the misconduct that has occurred. See *Grievance Committee* v. *Goldfarb*, 9 Conn. App. 464, 470, 519 A.2d 624, cert. denied, 203 Conn. 802, 522 A.2d 292 (1987). Here, the courts chose not to exercise their disciplinary power, and the committee, exercising the power delegated to it, properly undertook to investigate and to evaluate the alleged misconduct.

## II

Ansell next claims that there was insufficient evidence to support a reprimand under rule 3.4, which provides in relevant part: "A lawyer shall not . . . (5) [i]n trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of the accused . . . ." The committee determined that Ansell's statements to Judge McLachlan, during the two hearings before him, were made recklessly, were false and were not supported by the evidence in the transcripts. Ansell argues that she indicated at the time of the allegedly improper statements that her recollection on the matter of ex parte communication was not clear and that her real concern was Anderson, who allegedly had admitted to receiving ex parte communications. Furthermore, because Judge McLachlan clarified what was actually at issue, she contends that no harm came from her

statements. Finally, she maintains that any reprimand for her conduct will effectively chill robust attorney representation. We are not persuaded.

Although Ansell did indicate at the conference with Judge Berdon that she was unprepared to argue the issue of ex parte communication, five days later, presumably after having enough time in which to refresh her recollection from the transcripts, Ansell again raised the issue of ex parte communication between Traystman and Anderson. She stated to Judge McLachlan that those communications regarded matters other than scheduling, a statement directly in conflict with the evidence presented in the transcript, which indicated that Anderson and Traystman had communicated only regarding scheduling matters. Furthermore, Ansell raised the issue again three weeks later, citing for support those portions of the transcript in which Anderson stated that he had communicated with Traystman, but only for scheduling purposes. It was not until the court had asked her three times what it was she alleged Traystman had improperly communicated to Anderson that Ansell referred to the allegation that Traystman had improperly provided background reports. That allegation, she then admitted, had been disproved prior to her involvement in the case. Thus, although she expressed some reservation in the first instance, Ansell continued to make statements of fact she could not support with evidence after having had the time and opportunity to research and to correct her position on the issue.

Ansell's claim that her real concern was Anderson's reappointment as an evaluator is without merit. Ansell's concerns about Anderson in no way contradict a finding that she repeatedly made unsubstantiated allegations that Traystman had engaged in misconduct.

Her claim that Judge McLachlan's questioning mitigated any potential harm from her mischaracterization

of the communication between Traystman and Anderson is also unavailing. Rule 3.4 (5) does not state that the court must be misled or that any injury must result. Rule 3.4 simply provides in relevant part that "[a] lawyer shall not . . . (5) [i]n trial, allude to any matter . . . that will not be supported by admissible evidence . . . ." Rules of Professional Conduct 3.4. An underlying purpose of rule 3.4 is to ensure that lawyers treat opposing counsel with fairness; leveling an unsubstantiated claim of misconduct against opposing counsel undeniably violates the spirit and intent of the rule.

Ansell maintains that any reprimand for her conduct will chill vigorous attorney representation on behalf of their clients.[1] We fail to see how effective representation will be undermined by requiring attorneys to have evidence to substantiate claims brought before the court.

Having reviewed the record and considered Ansell's claims, we conclude that the committee's factual findings are supported by the evidence, its conclusions are legally sound, and it has established by clear and convincing evidence that Ansell's conduct violated rule 3.4 (5).

### III

Ansell next claims that there was insufficient evidence to support a reprimand under rule 8.4 (3). Rule 8.4 provides in relevant part: "It is professional misconduct for a lawyer to . . . (3) [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ." The committee determined that Ansell's state-

---

[1] In support of this contention, Ansell cites § 586 of 3 Restatement (Second), Torts (1977), which provides that an attorney is privileged to publish a defamatory matter during a judicial proceeding. We note that this provision concerns an attorney's legal liability for defamation, while the Rules of Professional Conduct concern preserving the integrity of the legal profession and the orderly administration of justice. See generally Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities; Scope.

ments to the court concerning the ex parte communications constituted misrepresentation under the rule. Ansell argues, inter alia, that her comments were not intentional and, thus, not fraudulent misrepresentation, that no statement of fact on her part resulted in injury and that questioning by Judge McLachlan clarified the issue, preventing any harm.

Ansell argues that because the committee found that her misstatements were reckless and not intentional, she did not have the requisite intent for fraudulent misrepresentation and, thus, could not have violated rule 8.4. Her contention might be correct were the rule phrased in terms of fraudulent misrepresentation. It is not. Rule 8.4 simply states in relevant part that "[i]t is professional misconduct for a lawyer to . . . (3) [e]ngage in . . . misrepresentation . . . ."[2] Fraud is listed as a separate ground for a finding of misconduct. The rule itself provides no scienter requirement, and Ansell provides no authority for the proposition that it does.

Neither this court nor our Supreme Court has considered whether a violation of rule 8.4 (3) requires a finding of intent. The Superior Court has determined on at least two occasions that it does not. See *Statewide Grievance Committee* v. *Salmon,* Superior Court, judicial district of New Haven, Docket No. 269373 (February 8, 2000); *Parese* v. *Statewide Grievance Committee,* Superior Court, judicial district of Hartford, Docket No. 348079 (April 21, 1993). Furthermore, we have held that rule 8.4 (4) does not contain such a requirement. *Daniels* v. *Statewide Grievance Committee,* 72 Conn. App. 203, 210–11, 804 A.2d 1027 (2002). In *Daniels,* we stated that "[a] judge may be sanctioned for a wilful violation of one of the canons of judicial conduct if he intended to

---

[2] Misrepresentation is merely "[a]n untrue statement of fact." Black's Law Dictionary (6th Ed. 1990).

engage in the conduct for which he is sanctioned whether or not [he] knows that he violates the rule. . . . That reasoning equally is applicable to lawyers and, therefore, we conclude that the court properly held that rule 8.4 (4) does not have a scienter requirement." (Citation omitted; internal quotation marks omitted.) Id. The reasoning of *Daniels* applies to rule 8.4 (3), and we accordingly conclude that the rule has no scienter requirement.

Ansell attempts to distinguish this case from *Parese* and *Salmon* on the grounds that no statement she made resulted in injury and that questioning by Judge McLachlan clarified the issue. As with rule 3.4 (5), however, there is no requirement that the court be misled or that injury result. Rule 8.4 addresses conduct that "indicate[s] lack of those characteristics relevant to law practice," including those involving dishonesty. Rules of Professional Conduct 8.4, commentary. In that context a "pattern of repeated offenses . . . can indicate indifference to legal obligation." Id. On three separate occasions, Ansell represented that Traystman had improper ex parte communications with Anderson. These statements were contrary to fact. Ansell therefore engaged in conduct involving misrepresentation within the meaning of rule 8.4 (3).

Having reviewed the record and considered Ansell's claims, we conclude that the committee's factual findings are supported by the evidence, its conclusions are legally sound and that it established by clear and convincing evidence that Ansell's conduct violated rule 8.4 (3).

The judgment is affirmed.

In this opinion the other judges concurred.